**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GREGORY SWECKER, et al.

*Plaintiffs,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Defendant.*

**Case No. 1:25-CV-4555-RCL**

## MEMORANDUM OPINION

Plaintiffs have been familiar litigants to this Court for many years. They now return to bring suit against the Federal Energy Regulatory Commission ("FERC") under the Administrative Procedure Act ("APA"). ECF No. 1. Plaintiffs seek to compel FERC to "implement" certain regulations promulgated under the Public Utility Regulatory Policies Act ("PURPA"). FERC has moved to dismiss. ECF No. 8. For the reasons stated herein, Plaintiffs' suit will be dismissed for lack of standing.

## I. BACKGROUND

### A. Statutory Background

Congress enacted PURPA in part to promote the development of alternative energy resources. *See FERC v. Mississippi*, 456 U.S. 742, 745 (1982). Understanding "traditional utilities' reluctance to deal with" alternative energy sources, Congress crafted PURPA to direct FERC to implement "mandatory purchase and sell obligations, requiring electric utilities to purchase electric power from, and sell power to, qualifying cogeneration and small power production

facilities (collectively, 'qualifying facilities')." *Cal. Edison Co. v. FERC*, 443 F.3d 94, 95 (D.C. Cir. 2006) (citing 16 U.S.C. § 824a–3(a)). The statute provided that the rates for these purchases shall not "exceed[ ] the incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a–3(b)(2). These rates are commonly referred to as a utility's "avoided cost." *See Midland Power Co–op. v. FERC*, 774 F.3d 1, 3 (D.C. Cir. 2014).

FERC regulations provide that electric utilities must submit data to their state regulatory authority so that the "avoided cost" can be determined. See 18 C.F.R. § 292.302. FERC may commence an enforcement action against "any State regulatory authority or nonregulated electric utility" to ensure compliance with PURPA and the rules promulgated thereunder. See 16 U.S.C. § 824a–3(h)(2)(A). PURPA also provides that a qualifying facility may petition FERC to enforce these statutory and regulatory requirements. See id. at § 824a-3(h)(2)(B). If FERC declines to commence an enforcement action, the qualifying facility may then "bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements." *Id.* (emphasis added).

**B. Factual Background**

Despite proceeding *pro se*, the Sweckers are seasoned litigants. Their filings have been prolific in this district and others. *See Swecker*, 2022 WL 4534944, at *2 n.2, *2 n.3 (collecting cases). The Sweckers own a wind turbine in Iowa, which was designated as a qualifying facility under PURPA. Compl. ¶¶ 14–15. They sell the power from their wind turbine to Midland Power Cooperative ("Midland"), who Plaintiffs allege is underpaying them. *See id.* ¶¶ 46, 66. Specifically, Plaintiffs claim that Midland is purchasing electricity from Central Iowa Power Cooperative ("CIPCO") at a preferential rate. *Id.* ¶ 66.

"The Sweckers have repeatedly, and unsuccessfully, petitioned FERC to initiate an enforcement action against Midland." *Swecker*, 2022 WL 4534944, at *2. And now they are back.

Plaintiffs state that they are seeking an order against Midland Power Cooperative to provide "Midland's full incremental avoided cost rates and/or impose penalties against Midland for failing to do so as mandated by the implementation of Subpart D of PURPA. Compl. at 3. Plaintiffs also indicate that they are seeking an "order by FERC . . . for Central Iowa Power Cooperative ("CIPCO") to provide data of CIPCO's full incremental avoided cost rates or impose penalties against CIPCO . . . ." *Id.*

FERC has moved to dismiss. ECF No. 8. Plaintiffs oppose. ECF No. 11. The motion is now fully briefed and ripe for the Court's review.

## II. LEGAL STANDARD

### A. Subject-Matter Jurisdiction

"Federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler Elevator Corp. v. Wash. Metro. Area Transit Authority*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("All federal courts[] 'are under an independent obligation to examine [their] own jurisdiction . . . ." (quoting *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990))). The Supreme Court has recently emphasized that "the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).

**B. Standing**

Federal jurisdiction is limited by Article III of the Constitution. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47 (2025). "Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1554 (2024). "For there to be a case or controversy under Article III, the plaintiff must have a "personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Rained v. Byrd*, 521 U.S. 811, 819 (1997)).

"To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 144 S. Ct. at 1555.

**C. Pro Se Litigants**

"[C]omplaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers." *Butler v. Cal. State Disbursement Unit*, 990 F. Supp. 2d 8, 8 (D.D.C. 2013) (Jackson, J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

"[W]hen weighing whether a pro se plaintiff has stated a claim, courts must treat 'technical deficiencies in the complaint . . . leniently' and 'scrutinize[]' the 'entire pleading ... to determine if any legally cognizable claim can be found.'" *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (alterations in original) (quoting Wright, Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1286 (4th ed. 2021)).

## III. ANALYSIS

Plaintiffs' claims must fail because Plaintiffs lack Article III standing. The Sweckers base their theory of injury on FERC's failure to enforce against Midland and CIPCO. Plaintiffs state that the "FERC has refused to exercise [their] authority to the detriment of the Plaintiffs." Compl. at 14. Specifically, Plaintiffs allege that FERC has failed "to act in implementing the reporting requirements of Subpart D 292.401 of PURPA . . . to the detriment of the Plaintiff." Compl. at 15.

The Court understands Plaintiffs to be referring to FERC's authority to bring enforcement actions. Plaintiffs ask the Court to make FERC implement 18 C.F.R. 292.302(b)(1), 292.303(c)(ii)(2), 292.304(d), and Subpart D 292.401. Those regulations were enacted pursuant to § 210 of the PURPA, which is enforced by FERC. 16 U.S.C. § 824a-3(h)(2)(B); *see also Indus. Cogenerators v. FERC*, 47 F.3d 1231, 1232 (D.C. Cir. 1995). Plaintiffs also describe how they have been aggrieved by FERC's failure to initiate enforcement in their opposition to the present motion. *See* Pls.' Opp., ECF No. 11 at 13.

Standing requires a redressable injury. *See All. for Hippocratic Med.*, 144 S. Ct. at 1555. For an injury to be redressable, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). "Typically, redressability is absent only when the Court's decision would have 'no real effect' on the plaintiff's injury." *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (citing *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018)).

Even construing the Complaint liberally, the Court cannot redress Plaintiffs' alleged injuries because it cannot order FERC to commence any enforcement action under the APA. The

D.C. Circuit has ruled that "that FERC's decision not to bring enforcement actions under PURPA is unreviewable because the decision is committed to FERC's discretion by law." *Swecker*, 2022 WL 4534944, at *3. In fact, the D.C. Circuit told the Sweckers themselves. *Swecker v. Midland Power Cooperative*, 743 F. App'x 472, 473 (D.C. Cir. 2018).

True, there are exceptions to that rule. The Circuit has explained that a plaintiff may prevail in reviewing agency enforcement decisions in three circumstances: "(1) where 'the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers'; (2) where the agency refuses 'to institute proceedings based solely on the belief that it lacks jurisdiction'; and (3) where the agency 'has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'" *Swecker*, 2022 WL 4534944, at *3 (quoting *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 460 (D.C. Cir. 2001)). Plaintffs have not invoked any of these exceptions.[1]

Plaintiffs now point to *Loper Bright Enterprises v. Raimondo* to suggest that the Court should no longer defer to FERC's decisions when "the law presents no ambiguity as to the guaranteed right of QF's." 144 S. Ct. 2244 (2024). The Court understands Plaintiffs to suggest that FERC's enforcement decisions are now reviewable.

That argument is not correct. *Loper Bright* stands for the proposition that "courts must exercise independent judgment in determining the meaning of statutory provisions." *Id.* at 2262. And Plaintiffs' do not apparently challenge FERC's interpretation of a statute. And even if they did, the statute dictates that the Commission "may" bring enforcement actions. 16 U.S.C. § 824a-

[1] The Court has previously addressed the possible applicability of exception 1. *See Swecker*, 2022 WL 4534944, at *4.

3(h)(2)(A). The Circuit has already decided that such language commits enforcement decisions to the Commission's discretion by the law. *See Swecker*, 743 F. App'x at 473.

## IV. CONCLUSION

Because the Court has determined that it lacks have subject-matter jurisdiction, it does not reach the remaining arguments addressed in FERC's motion. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. . . . when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons stated herein, FERC's Motion to Dismiss will be granted. Plaintiffs' remaining motions will be denied as moot.

Because the jurisdictional issues in this case do not require reference to the Administrative Record, FERC's motion to waive compliance with Rule 7(n) will be granted. *See Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

An Order accompanying this Memorandum Opinion shall issue.

Date: 5 October, 2026

Royce C. Lamberth
Hon. Royce C. Lamberth
United States District Judge